1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

12  RONALD MORENO,                          1:06-CV-01241 LJO SMS HC

13              Petitioner,                 FINDINGS AND RECOMMENDATION
                                            REGARDING PETITION FOR WRIT OF
14       v.                                 HABEAS CORPUS

15  K. MENDOZA-POWERS, Acting Warden,
16
                Respondent.
17  _____/

18
19       Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

20  pursuant to 28 U.S.C. § 2254.

21                              **PROCEDURAL BACKGROUND**

22       Petitioner is currently in the custody of the California Department of Corrections pursuant

23  to a judgment of the Superior Court of California, County of Los Angeles, after being found

24  guilty on May 6, 1975, of first degree murder in violation of Cal. Penal Code § 187. See

    Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1.  On August 5, 1975,
25
    Petitioner was sentenced to serve an indeterminate term of six months to life in state prison with
26
    the possibility of parole. Id.
27
         On May 20, 2004, Petitioner attended a subsequent parole suitability hearing before the
28

                                            1

California Board of Prison Terms (now the Board of Parole Hearings - "Board"). <u>See</u> Answer, Exhibit 2. Petitioner participated in the hearing and was represented by counsel. <u>Id</u>. At the conclusion of the hearing, the Board concluded Petitioner was suitable for parole. <u>Id</u>. at 45.

On October 11, 2004, after considering the parole decision of the Board, Governor Arnold Schwarzenegger reversed the Board's decision. <u>See</u> Answer, Exhibit 3.

Petitioner then sought relief in the state courts. He filed a habeas petition in the Los Angeles County Superior Court on February 23, 2005, which was denied in a reasoned decision on April 25, 2005. <u>See</u> Answer, Exhibit 4. He then filed a habeas petition in the California Supreme Court on October 5, 2005. <u>See</u> Answer, Exhibit 5. That petition was denied on July 12, 2006. <u>Id</u>.

Petitioner filed the instant petition for writ of habeas corpus on August 23, 2006, in the United States District Court, Central District of California. The petition was transferred to this Court on August 30, 2006. The petition challenges the Governor's 2004 decision reversing the Board's grant of parole.

On January 8, 2007, Respondent filed an answer to the petition. Respondent concedes Petitioner has exhausted his state remedies and the petition is timely. Petitioner filed a traverse on March 15, 2007.

## FACTUAL BACKGROUND[1]

On the night of January 4, 1975, at approximately 11:00 p.m., Petitioner and two juveniles entered a restroom at Drake Park in Long Beach, California. Shortly thereafter, the 18-year old victim, Ramon Magallon, entered the restroom as well. The victim said something in Spanish to Petitioner and lunged or swung at him. Petitioner then pushed the victim out of the restroom. He beat and kicked the victim repeatedly until he lapsed into unconsciousness. Petitioner then dragged the victim back into the restroom, removed his clothing, and took his wallet. The victim was found the next morning nude in the restroom doorway with personal papers strewn about and his clothing upon the roof of the restroom. The victim died from

---

[1]The information is derived from the statement of facts read into the record at Petitioner's 2004 hearing before the Board. <u>See</u> Answer, Exhibit 2.

1  multiple traumatic injuries due to blunt force.

**DISCUSSION**

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established

Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

 Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

1   AEDPA requires that we give considerable deference to state court decisions. The state

2   court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

3   interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,

4   537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

5   II.   Review of Petition

6   A parole release determination is not subject to all the due process protections of an

7   adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see

8   also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural

9   protections that particular situations demand). "[S]ince the setting of a minimum term is not part

10   of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not

11   constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at

12   1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). In the state parole

13   context, the only process to which an inmate is entitled is: 1) the inmate must receive advance

14   written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an

15   "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the

16   inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision must be

17   supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc.

18   Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

19   "In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not

20   comport with 'the minimum requirements of procedural due process,' unless the findings of the

21   prison disciplinary board are supported by some evidence in the record.'  472 U.S. 445, 454

22   (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In

23   determining whether the "some evidence" standard is met, this Court need not examine the entire

24   record, independently assess the credibility of witnesses, or re-weigh the evidence.  Id.  Rather,

25   this Court must determine whether there is any evidence in the record that could support the

26   conclusion reached by the Governor.  Id., *citing* Superintendent v. Hill, at 455-56.  Although Hill

27   involved the accumulation of good time credits, the same standard applies to parole, as both

28   situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of

1    Parole, 833 F.2d at 1390.

2         In making a determination whether an inmate is suitable for parole, the parole board is

3    guided by the following regulations:

4              (a) General. The panel shall first determine whether the life prisoner is suitable for
         release on parole. Regardless of the length of time served, a life prisoner shall be found
5        unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an
         unreasonable risk of danger to society if released from prison.
6
               (b) Information Considered. All relevant, reliable information available to the
7        panel shall be considered in determining suitability for parole. Such information shall
         include the circumstances of the prisoner's social history; past and present mental state;
8        past criminal history, including involvement in other criminal misconduct which is
         reliably documented; the base and other commitment offenses, including behavior before,
9        during and after the crime; past and present attitude toward the crime; any conditions of
         treatment or control, including the use of special conditions under which the prisoner may
10       safely be released to the community; and any other information which bears on the
         prisoner's suitability for release. Circumstances which taken alone may not firmly
11       establish unsuitability for parole may contribute to a pattern which results in a finding of
         unsuitability.
12
     15 Cal. Code Regs. §§ 2402(a) and (b).
13
          In this case with regard to the procedural protections outlined in Greenholtz, Petitioner
14
     was provided all that is required.  Petitioner was given advance notice of the hearing, he was
15
     represented by counsel at the hearing, he was granted an opportunity to submit materials for the
16
     Board's consideration and an opportunity to be heard during the hearing, and he was provided a
17
     written decision explaining the reasons.  See Answer, Exhibit 2. All of this information was
18
     submitted to the Governor and considered in his decision.
19
          Petitioner, however, contends the Governor's decision had no evidentiary support.  After
20
     reviewing the record, the Court finds that the state court decisions rejecting Petitioner's claims
21
     were not unreasonable, because the Governor's decision is supported by at least "some
22
     evidence."
23
          Title 15, of the California Code of Regulations, Section 2402(c) sets forth certain
24
     negative factors which the Board would consider in determining whether Petitioner is suitable for
25
     parole.
26
     Section 2402(c) provides:
27
               Circumstances Tending to Show Unsuitability. The following circumstances each
28       tend to indicate unsuitability for release. These circumstances are set forth as general

                                                      6

1  guidelines; the importance attached to any circumstance or combination of circumstances
2  in a particular case is left to the judgment of the panel. Circumstances tending to indicate
   unsuitability include:

3     (1) Commitment Offense. The prisoner committed the offense in an especially
      heinous, atrocious or cruel manner.  The factors to be considered include:
4
5        (A) Multiple victims were attacked, injured or killed in the same or
         separate incidents.

6        (B) The offense was carried out in a dispassionate
         and calculated manner, such as an execution-style
7        murder.

8        (C) The victim was abused, defiled or mutilated
         during or after the offense.
9
10       (D) The offense was carried out in a manner which
         demonstrates an exceptionally callous disregard for
         human suffering.
11
12       (E) The motive for the crime is inexplicable or very
         trivial in relation to the offense.

13    (2) Previous Record of Violence. The prisoner on previous occasions inflicted or
      attempted to inflict serious injury on a victim, particularly if the prisoner
14    demonstrated serious assaultive behavior at an early age.

15    (3) Unstable Social History. The prisoner has a history of unstable or tumultuous
      relationships with others.
16
17    (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted
      another in a manner calculated to inflict unusual pain or fear upon the victim.

18    (5) Psychological Factors. The prisoner has a lengthy history of severe mental
      problems related to the offense.
19
20    (6) Institutional Behavior. The prisoner has engaged in serious misconduct in
      prison or jail.

21 15 Cal.Code Regs. § 2402(c).

22      In reversing the Board's decision, the Governor considered and found several factors

23 indicating unsuitability per § 2402(c). First, the Governor relied on Petitioner's previous record

24 of violence pursuant to § 2402(c)(2). The Governor noted Petitioner had an extensive criminal

25 history going back to an early age. From nine to fourteen years old, Petitioner had numerous

26 contacts with law enforcement. When he was fourteen, he was sent to a juvenile camp for grand

27 theft auto and he subsequently ran away. At fifteen, he was sent to a juvenile detention facility

28 for charges of assault with a deadly weapon. When he was sixteen, he was returned to the facility

1  for loitering and running away. At seventeen, he was sentenced to probation for commercial

2  burglary. Thus, there was ample evidence to support the Governor's finding on this factor.

3          The Governor further found Petitioner had engaged in misconduct while incarcerated.

4  The Governor noted that Petitioner had been disciplined six times for serious rules violations.

5  Four of those violations were for assaultive and violent conduct: one for stabbing another inmate,

6  one for a physical altercation, and two for throwing unknown substances at correctional staff.

7  The Governor did note, however, that Petitioner has maintained a disciplinary-free record since

8  1979. Nevertheless, given Petitioner's institutional behavior record, the Governor properly

9  considered this information in determining Petitioner was not suitable for release.

10         The Governor also relied on the facts of the commitment offense. Pursuant to

11  § 2402(c)(1)(D), the Governor found the first degree murder was carried out in a manner which

12  demonstrates an exceptionally callous disregard for human suffering. This finding is supported

13  by "some evidence." Petitioner and two others repeatedly beat and kicked the victim to death.

14  These facts support the Governor's finding under § 2402(c)(1)(D). The Governor further found

15  that the victim was defiled after the offense pursuant to § 2402(c)(1)(C). This finding is

16  supported by the fact that after the victim had been beaten into unconsciousness, Petitioner pulled

17  the victim's body into the restroom and stripped him naked.

18         Despite the negative factors discussed above, the Governor also found several positive

19  factors in Petitioner's background pursuant to § 2402(d). First, it was noted that Petitioner had

20  shown increased maturity and progress by remaining disciplinary-free since 1979. See

21  § 2402(d)(9). The Governor noted that Petitioner had acquired his GED and received training in

22  sewing machine repair, baking, and dry cleaning. See § 2402(d)(8). Petitioner had held several

23  skilled jobs in the institution and participated in volunteer activities. It was further noted that

24  Petitioner had completed several self-help and therapy programs. Petitioner also received a

25  number of laudatory reports and evaluations by prison staff and mental health evaluators. These

26  factors were considered as circumstances tending to show suitability for parole release.

27         Nevertheless, the Governor noted the circumstances of the offense, Petitioner's prior

28  record of violence, and his institutional behavior led him to conclude Petitioner was not yet

8

1   suitable for parole. In addition, the Governor noted Petitioner had no offer of employment upon

2   release. Given Petitioner's history of theft-related offenses, this was relevant and significant since

3   being able to support oneself financially is critical to success upon parole. Although not an

4   enumerated negative factor under § 2402(c), this information could be considered in

5   § 2402(d)(8). The Governor called into question whether Petitioner had realistic parole plans in

6   light of a lack of employment offer upon release despite his many skills.

7          It is apparent the Governor considered all relevant evidence in this case and carefully

8   balanced and assessed the various factors. The Governor reasonably determined that Petitioner

9   remained an unreasonable risk of danger to society if released. His findings were supported by at

10  least "some evidence."

11         Petitioner also contends the Governor is relying on the immutable circumstances of the

12  underlying offense and his juvenile criminal history. The Ninth Circuit has held that serious

13  questions involving a prisoner's liberty interest in parole would be raised if the Board or

14  Governor continued to rely solely on the gravity of the offense and conduct prior to

15  imprisonment to justify denial of parole, despite a prisoner's continuing demonstration of

16  exemplary behavior and evidence of rehabilitation. Biggs, 334 F.3d at 916. As discussed above,

17  however, the circumstances of the offense and Petitioner's past criminal history, while

18  significant, were not the only reasons for the Governor's decision. The Governor also relied on

19  Petitioner's institutional misconduct in denying parole.

20         Petitioner also contends the Board failed to provide him with a hearing pursuant to In re

21  Stanworth, 33 Cal.3d 176 (1983). Nevertheless as argued by Respondent, the claim is not

22  cognizable in this action. He claims he is entitled to a procedure pursuant to a state law, and

23  generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S.

24  62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for

25  errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor,

26  508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does

27  not rise to the level of a constitutional violation, may not be corrected on federal habeas"). In

28  addition, "the availability of a claim under state law does not of itself establish that a claim was

1   available under the United States Constitution." <u>Sawyer v. Smith</u>, 497 U.S. 227, 239 (1990),

2   *quoting,* <u>Dugger v. Adams</u>, 489 U.S. 401, 409 (1989). The instant claim is based on state law and

3   must be dismissed.

4        Petitioner next claims the Governor's failure to consider the parole grant under both the

5   Indeterminate Sentencing Law ("ISL") and Determinate Sentencing Law ("DSL") violated the Ex

6   Post Facto clause. However as correctly noted by Respondent, this claim has been rejected by

7   both the state courts and federal courts. <u>See</u> <u>Connor v. Estelle</u>, 981 F.2d 1032, 1033 (9th

8   Cir.1992); <u>In re Duarte</u>, 143 Cal.App.3d 943, 951 (1983).

9        Last, Petitioner argues the Governor's review of the Board's grant violated the Ex Post

10  Facto clause since the Governor did not have such authority at the time of Petitioner's offense.

11  This claim must also be rejected because the Governor's review process does not increase the

12  punishment for the offense; it merely changes the identity of the official making the final

13  determination. <u>Johnson v. Gomez</u>, 92 F.3d 964, 967 (9th Cir.1996).

14       In light of the foregoing, it cannot be said that the state court resolution of Petitioner's

15  claims "resulted in a decision that was contrary to, or involved an unreasonable application of,

16  clearly established Federal law, as determined by the Supreme Court of the United States" or

17  "resulted in a decision that was based on an unreasonable determination of the facts in light of

18  the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

19                              **RECOMMENDATION**

20       Accordingly, IT IS HEREBY RECOMMENDED that:

21       1.      The petition for writ of habeas corpus be DENIED; and

22       2.      Judgment be entered in favor of Respondent.

23       This Findings and Recommendations is submitted to the assigned United States District

24  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

25  the Local Rules of Practice for the United States District Court, Eastern District of California.

26  Within thirty (30) days after being served with a copy, any party may file written objections with

27  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

28  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 19, 2007**          /s/ **Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE